# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

PATRICIA D. WADDELL,

    Plaintiff,

v.                                     Civil Action 2:17-cv-591
                                       Judge James L. Graham
                                       Magistrate Judge Jolson

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Patricia D. Waddell filed this action under 42 U.S.C. § 405(g) seeking review of an unfavorable decision by the Commissioner of Social Security (the "Commissioner") denying her applications for Title II benefits and Title XVI Supplemental Security Income disability benefits. For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED**, and that judgment be entered in favor of Defendant.

## I. BACKGROUND

Plaintiff filed her applications for Title II benefits and Title XVI Supplemental Security Income disability benefits on November 7, 2013, alleging that she has been disabled since September 27, 2013, due to arthritis in her feet and back pain. (Tr. 214–21, 250, PAGEID #: 260–67, 297). Plaintiff's claims were denied initially on March 11, 2014 (Tr. 80–95, PAGEID #: 124–39; Tr. 96–111, PAGEID #: 140–55), and upon reconsideration on July 7, 2014 (Tr. 114–29, PAGEID #: 158–73; Tr. 130–45, PAGEID #: 174–89). She filed a Request for Hearing on July 21, 2014. (Tr. 159–60, PAGEID #: 204–205).

Administrative Law Judge (the "ALJ") Robert H. Schwartz held an administrative hearing by video conference on March 2, 2016. (Tr. 48–77, PAGEID #: 91–120). On April 29, 2016, the ALJ issued a decision denying Plaintiff benefits (Tr. 25–46, PAGEID #: 68–89). On May 12, 2017, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (Tr. 1–7, PAGEID #: 44–50).

Plaintiff filed this case on July 9, 2017, and the Commissioner filed the administrative record on September 11, 2017. (Doc. 9). Plaintiff filed a Statement of Specific Errors on November 9, 2017 (Doc. 12), and the Commissioner responded on December 26, 2017 (Doc. 14). Plaintiff did not file a reply.

**A. Relevant Medical Evidence**

This case concerns the ALJ's evaluation of the mental health evidence. Hence, the Court's review of the evidence is limited to the mental health opinions.

*1. Dr. Sarver*

On referral from the Division of Disability Determination ("DDD"), clinical psychologist and neuropsychologist Gary S. Sarver, Ph.D. conducted a psychological evaluation of Plaintiff on February 10, 2014, and completed a corresponding report on February 13, 2014. (Tr. 569, PAGEID #: 617). During that appointment, Plaintiff expressed that she is unable to work because of a back impairment, and she applied for DDD services because her "husband is on it." (*Id.*).

Dr. Sarver noted that Plaintiff's independent living skills appeared "to be adequate and she does participate in the day-to-day demands of living including shopping, bill paying, household management, and childcare." (Tr. 570, PAGEID #: 618). Plaintiff indicated that she has no friends and stated that "people make [her] nervous." (Tr. 571, PAGEID #: 619). Plaintiff

2

reported past work in a laundry and a glass factory; and as a cashier. (*Id*.). Plaintiff "[got] along okay" with her supervisors and coworkers. (*Id*.). When asked about the public, Plaintiff stated, "I don't want to be around no one." (*Id*.).

Dr. Sarver noted Plaintiff has no history of treatment by a mental health specialist. (*Id*.). When Dr. Sarver asked Plaintiff why she was depressed, she responded "I don't know." (Tr. 571, PAGEID #: 619). Plaintiff also indicated that she "is angry" at herself "7 days a week." (Tr. 572, PAGEID #: 620). Dr. Sarver ultimately found that:

> [t]he data presently available … suggests a diagnosis of adjustment disorder with anxiety and depression. This accounts for her weight gain, diminished energy, disturbed sleep, depression, and affective instability. It also accounts for her avoidance of others and her desire to be alone. This is exacerbated by her apparent low level of intellectual functioning and poorly developed coping skills which limits her ability to adaptively manage her stress and anxiety. She apparently channels psychological concerns and complaints into somatic issues.
>
> Nevertheless, she is able to accomplish her [activities of daily living] independently and adequately. She was able to recall a detailed and extensive personal, family, and work history. She had no significant difficulties with digit recall or word recall. She reported no significant problems functioning in the work place although she was fired for missing work on one occasion. She generally got along reasonably well with supervisors and coworkers.

(Tr. 574, PAGEID #: 622).

Dr. Sarver concluded his report with Plaintiff's functional assessment:

> **Claimant's abilities and limitations in understanding, remembering, and carrying out instructions:**
> Her apparent below average level of intellectual functioning suggests that she should have no particular difficulty in understanding, remembering, or carrying out simple job instructions. She is likely to experience consistent difficulties as the job instructions become increasingly complex. Her depression and anxiety, and poor coping skills, may attenuate her ability to carry out complex job instructions.
>
> **The claimant's abilities and limitations in maintaining attention and concentration, and in maintaining persistence and pace, to perform simple tasks and to perform multistep tasks:**

> She demonstrated no significant problems during the interview of having difficulty with attentional pace or persistence. She had no significant problem with digit recall or word recall and she was able to recall a detailed and extensive personal, family, and work history. She does appear capable of engaging in her ADLs independently and adequately. Her depression and anxiety, in conjunction with her poor coping skills, may attenuate her capacity to reliably perform multistep tasks.
>
> **The claimant's abilities and limitations and responding appropriately to supervision and coworkers in a work setting:**
> Historically, she has manifested no particular difficulty getting along with supervisors and coworkers in the work place. Her depression and anxiety may episodically attenuate this capacity.
>
> **The claimant's abilities and limitations in responding appropriately to work pressures in a work setting:**
> She is likely to have difficulty organizing, structuring, and working towards goals. She is likely to have difficulty containing her anger, managing her frustration, and controlling her impulses. She is likely to depend upon other people and/or situations to structure life for her. Her poor coping skills limit her capacity to deal with the complexities and demands of the normative work situation. Her usual remedy is to exit the job situation or avoid it. She has a particularly difficult time with self-comfort and appropriately managing her anxiety and depression.

(Tr. 574–75, PAGEID #: 622–23).

    2.    *Dr. Haskins and Dr. Lai*

Non-examining psychologist Dr. Kristen Haskins completed a mental residual capacity assessment on February 27, 2014. (Tr. 106–108, PAGEID #: 150–52). Dr. Haskins opined that Plaintiff is moderately limited in her ability to understand and remember detailed instructions. (Tr. 107, PAGEID #: 151). Dr. Haskins specified that Plaintiff "retains the ability to perform one to four step tasks." (*Id.*). She also found Plaintiff has moderate limitations in sustained concentration and persistence, stating that Plaintiff "retains the ability to perform simple one to four step tasks in a setting without strict production quotas and occasional contact with others as well as no need for close sustained focus/concentration." (Tr. 108, PAGEID #: 152).

4

Dr. Haskins determined that Plaintiff is markedly limited in her ability to interact appropriately with the public and moderately limited in her ability to accept instructions and respond appropriately to criticism and in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (*Id.*). However, Dr. Haskins determined that Plaintiff "retains the ability to relate to others occasionally in a nonpublic work setting." (*Id.*).

In considering Dr. Sarver's opinion, Dr. Haskins indicated that she gave it:

> [l]ess weight [because] Dr. Sarver's opinions appear to [sic] marked in general limitations [in] almost all areas of functioning. However, he reports clt is independent with all ADL's. No problem with past work. Dr. Sarver relies to [sic] heavily on the clt's opinion. Clt said she "did not know to a lot of questions". While she had low average intellect again this is inconsistent with her education and background in employment.

(Tr. 105, PAGEID #: 149).

Non-examining psychologist Dr. Jaime Lai completed a mental residual capacity assessment on June 19, 2014, which mirrored Dr. Haskin's findings. (Tr. 124–26, PAGEID #: 168–70) (indicating that Plaintiff "retains the ability to perform simple one to four step tasks that do not require close sustained focus/concentration or teamwork to complete, in a setting without strict production quotas"). Her consideration of Dr. Sarver's opinion also mirrored Dr. Haskins's. (Tr. 127, PAGEID #: 171). Dr. Lai stated that Dr. Sarver's opinion:

> relies heavily on the subjective report of symptoms and limitations provided by the individual, and the totality of the evidence does not support the opinion. The CE examiner's opinion is an overestimate of the severity of the individual's restrictions/limitations and based only on a snapshot of the individual's functioning.

(*Id.*).

**B. Relevant Hearing Testimony**

Plaintiff testified that she born on January 2, 1968, is 5'2" tall, and weighs 220 pounds. (Tr. 53, PAGEID #: 96). She lives in a trailer with her husband and two grandchildren, ages 11

and 9, over whom she has legal custody. (*Id.*). Plaintiff has a valid driver's license and drives once or twice a month. (Tr. 54, PAGEID #: 97). Plaintiff went to school through the twelfth grade but did not graduate from high school or earn a GED. (Tr. 54, PAGEID #: 97).

Plaintiff worked as a cashier and stocking shelves at Dollar General, until she hurt her back lifting a carpet. (Tr. 54, PAGEID #: 97). Prior to that position, Plaintiff worked at Economy Linen and Towel Service. (Tr. 54–55, PAGEID #: 97–98).

During the hearing, the ALJ acknowledged that Dr. Sarver diagnosed Plaintiff with an adjustment disorder with anxiety and depressed mood. (Tr. 61, PAGEID #: 104). When the ALJ asked Plaintiff if she was seeing anybody for depression and anxiety, she stated, "I don't see no one." (*Id.*). Nevertheless, Plaintiff stated that her depression and anxiety cause "all kinds of symptoms" that impact her ability to work. (*Id.*). Plaintiff specified that she sometimes feels uncomfortable around people, although she didn't suffer from that while working. (Tr. 62, PAGEID #: 105).

Plaintiff testified that her doctor prescribed her medication for depression and anxiety in 2012, after her parents were in an accident. (Tr. 62, PAGEID #: 105). She found the medication helpful. (*Id.*). Plaintiff stated that she used to enjoy baking and making candy, but her only current hobby is crocheting. (Tr. 64, PAGEID #: 107). Plaintiff wakes up at 5:30 a.m. to get motivated before her grandsons wake up, and occasionally attends her grandson's football practice. (*Id.*).

Vocational Expert Robert Malik (the "VE") also testified at the hearing. (Tr. 68, PAGEID #: 111). The ALJ first asked the VE to consider an individual of Plaintiff's age, education, and work experience who is capable of light exertion, except the individual can stand

and walk for no more than 30 minutes at a time and for no more than a total of four hours out of a typical eight-hour workday. The ALJ continued:

> This individual can never climb a ladder, ropes, or scaffolds. This individual can climb ramps and/or stairs, stoop, kneel, crouch, and/or crawl no more than occasionally. I'd also like you to assume this individual can balance … no more than occasionally. This individual must avoid hazards like unprotected heights or dangerous machinery…. [T]his individual is limited to performing noncomplex, routine, and repetitive tasks on a sustained basis with only routine breaks….[T]his individual can relate to others occasionally in a nonpublic work setting. Considering this, any work should not require significant contact or any interaction with the general public and should not require more than occasional interaction with supervisors or coworkers. I'd like you to assume that any work must not require more than ordinary or routine changes in work setting or duties.

(Tr. 70, PAGEID #: 113). When the ALJ asked if such an individual could perform any past work, the VE responded "No." (*Id.*). The VE did state, however, that such an individual would be capable of performing light jobs where the individual sits a lot, such as polisher, folder, and electronics assembler. (Tr. 71, PAGEID #: 114).

The ALJ then asked the VE to assume that the hypothetical individual had sedentary exertional limitations and was required to avoid hazards like unprotected heights and concentrated exposure to temperature extremes, humidity, fumes, odors, dusts, gases, and poor ventilation. (*Id.*). The VE testified that such an individual would be able to perform sedentary jobs, including document preparer and sorter. (*Id.*).

The ALJ noted that state agency doctors found Plaintiff was capable of performing one to four step tasks and asked the VE whether one to four step tasks "mean anything … in terms of vocational relevance." (Tr. 72, PAGEID #: 115). The VE answered:

> A. Well, one—one to four step tasks, Your Honor, are something that's very simple and routine and repetitive such as you pick up the part, you put the part in the bag, you close the bag, put the bag in the box. So, I mean, we're talking very basic one to four step tasks. There's very few jobs that fit into that category at any level.

7

> Q. I know the GED reasoning, it—one of them talks about one and two step tasks. I was looking at that today. The other GED ratings, reasoning—
>
> A. Now—now you're confusing GED, which is something totally different with doing your job.
>
> Q. Well, I'm just trying to figure out where they came up with one to four step tasks. I've seen them used—
>
> A. I—I have no idea, but basically if you do a task analysis of anything, to get down to the steps, you're going to find very, very, very few jobs that are between one and four steps.
>
> Q. Okay.
>
> A. I have no idea where they got that from, but I—if I have to pick up a part, pick up a bag to put it in, put the part into the bag, and then put the bag aside, I'm already at four steps without even looking at the part to make sure it's okay.

(Tr. 72–73, PAGEID #: 115–16).

In discussing the additional limitations found by the state agency doctors with the VE, the ALJ observed that state agency doctors found Plaintiff has:

> moderate limitations in—the ability to maintain attention and concentration, moderate limitations in the ability to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances. Moderate limitations in the ability to sustain an ordinary routine without special supervision. Moderate limitations in the ability to work in coordination with or in proximity to others without being distracted by them. Moderate limitations in the ability to complete a normal workday and work week without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. And in terms of a narrative explanation, they indicated this individual retains the ability to perform simple, one to four step tasks that do not require close sustained focus, concentration, or teamwork to complete in a setting without strict production quotas. That—strict production quotas, I think it would be a new element to certainly—
>
> A. Well, Your Honor, the only thing I can say with that if you're going to limit it to one to four step tasks, then an individual basically is not able to take care of any personal hygiene, so therefore they're not able to do a job either.

8

Q. Okay. Okay.

A. Because every aspect of personal hygiene takes more than four steps. Every task, every aspect.

Q. Let me just finish with their reference to moderate limitations and the ability to respond appropriately to changes in the work setting. And they referred to anger and poor impulse control would reduce her capacity for effectively responding to workplace stress. Would be capable of tolerating the stress associated with routine and predictable duties in a relatively static setting where any changes in expectations can be explained in advance. Does that raise any—any issues for you?

A. No. I mean, your hypothetical covered all that stuff except for when you're getting down to one and two step tasks, as I stated. You do a task analysis of the simplest of personal hygiene, you're going to be at multiple steps. So—

Q. I guess it depends on how you define a step in the first instance and not—

A. Well, there's no—vocationally there's only way [sic] to define a step.

Q. You break it down into the simplest—

A. You break it down. And you take a look at each and every part. So, like I said, even if you go to brush your teeth you have to first get the toothbrush. You have to then get the toothpaste. You have to then put the toothpaste on the brush. Then you have to put it in your mouth. And, I mean, something like that we're already up to 8 to 10 steps to do one task. So, if you can't do one to four step tasks, then basically that person is saying the person is not able to tie their shoes, button their shirt, comb their hair, brush their teeth, or anything else, which is why I said vocationally there'd be no jobs.

Q. Okay. Aside from—from DDS summary ratings and narrative, if an individual could reasonably be expected to miss an average of two days of work each month on average, what kind of impact would that have on [INAUDIBLE]?

A. That would eliminate all jobs at all skill levels.

(Tr. 73–75, PAGEID #: 116–18).

9

## C. The ALJ's Decision

In the April 29, 2016 decision, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2018, and she has not engaged in substantial gainful activity since the alleged onset date of September 27, 2013. (Tr. 30, PAGEID #: 73). The ALJ found that Plaintiff's severe impairments consisted of lumbar degenerative disc disease, COPD, hypertension, history of renal artery stenosis with stenting, edema, obesity, affective disorder, and anxiety disorder. (Tr. 31, PAGEID #: 74). However, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or equals a listed impairment. (*Id*.).

The ALJ's observations concerning the severity of Plaintiff's mental impairments included the following:

> In activities of daily living, the claimant has no more than a mild restriction. She reported the following activities: shopping, cooking, washing dishes, doing laundry, bill paying, household management, and caring for her grandchildren, of whom she has custody (6F).
>
> In social functioning, the claimant has no more than moderate difficulties. She asserted that she prefers to be alone because people made her "nervous." She was diagnosed with adjustment disorder with mixed anxiety and depressed mood (6F). However, she is able to leave her home alone, drive, go shopping, and occasionally attend her grandson's football practices. She lives with her husband and two grandchildren, and indicated no difficulties getting along with them.
>
> With regard to concentration, persistence, or pace, the claimant has no more than moderate difficulties. She was diagnosed with adjustment disorder with mixed anxiety and depressed mood (6F). She testified that her attention and concentration are limited. The consultative examiner noted no difficulty with attentional pace or persistence; her memory was intact, and "she was able to recall a detailed and extensive personal, family, and work history" (6F/6).

(Tr. 32, PAGEID #: 75).

Based upon his review of the record, the ALJ found Plaintiff retained the RFC to:

perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can stand and/or walk for no more than 30 minutes at a time and for no more than a total of 4 hours out of a typical eight-hour workday. She can never climb ladders, ropes, or scaffolds. She can climb ramps and/or stairs, balance, stoop, kneel, crouch, and/or crawl no more than occasionally. She must avoid hazards, like unprotected heights or dangerous machinery. She is limited to performing non-complex, routine and repetitive tasks on a sustained basis with only routine breaks. She can relate to others occasionally in a non-public work setting; considering this, any work should not require significant contact or any interaction with the general public and any work should not require more than occasional interaction with supervisors or coworkers. Any work must not require more than ordinary or routine changes in work setting or duties.

(Tr. 33, PAGEID #: 76). The ALJ noted Plaintiff's reported symptoms of depression and anxiety, her limited concentration and focus, her desire to avoid people, and her statement that she was on medication for this at one time, which helped. (Tr. 34, PAGEID #: 77).

The ALJ likewise discussed the consultative evaluation conducted by Dr. Sarver on February 10, 2014. (Tr. 36, PAGEID #: 79). Specifically, the ALJ stated:

the claimant was diagnosed with adjustment disorder with mixed anxiety and depressed mood. She stated that she applied for disability because "my husband is on it", as he is disabled "with back problems." She reportedly smoked one pack of cigarettes a day. She denied any history of treatment by a mental health specialist. She asserted that she preferred to be alone and avoided others because "people make me nervous"; she got along "okay" with supervisors and coworkers, but did not want to be around the public. She indicated that she engaged in an array of daily activities, including shopping, cooking, washing dishes, doing laundry, bill paying, household management, and caring for her two grandchildren, of whom she has custody; her hobbies included "making candy". The examiner noted that "she apparently channels psychological concerns and complaints into somatic issues." The examiner opined that the claimant could understand, remember, and carry out simple job instructions, but would have difficulty with multi-step tasks, and limited capacity to deal with the complexities and demands of the normative work situation (6F).

(*Id.*). Generally with respect to Plaintiff's mental impairments, the ALJ noted that she has no history of specialized mental health treatment and she was not taking any psychotropic medication. (Tr. 38, PAGEID #: 81). Despite finding that Plaintiff "does have significant

limitations," the ALJ found that her "medical records and treatment history is not consistent with debilitating mental impairment." (*Id.*).

The ALJ also discussed the opinions of the State agency psychiatric consultants, observing that they:

> endorsed several moderate summary ratings and referred to "1-4 step tasks that do not require close, sustained focus, concentration or teamwork in setting without strict production quotas." They also endorsed "marked" restriction with respect to the general public (4A, 7A). Those ratings appear to be in response to CE Sarver's "functional assessment", although the DDS consultants specifically noted that Sarver "relies to [sic] heavily on the clt's opinion." It is also worth noting that Sarver diagnosed an adjustment disorder, which by DSM 5 definition should not last 12 consecutive months. The medical evidence does not support a finding that the claimant is limited to performing "1 to 4 step tasks" and the evidence is not consistent with any "marked" ratings. As such, they are entitled to little weight.

(Tr. 38–39, PAGEID #: 81–82).

The ALJ found that Plaintiff was unable to perform her past relevant work as a cashier and packager, had limited education, was able to speak English, and was at 45-years-old on the alleged onset date and, therefore, defined as a younger individual. (Tr. 39, PAGEID #: 82). He determined that transferability of job skills was not material to the determination of disability and that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 39–40, PAGEID #: 82–83). Thus, the ALJ decided that Plaintiff had not been under a disability, as defined in the Social Security Act, from September 27, 2013, through the date of the decision. (Tr. 41, PAGEID #: 84).

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." "[S]ubstantial evidence is defined as

'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To that end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 1:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III. DISCUSSION

To put the alleged errors in context, some of the pertinent facts bear repeating. In this case, Plaintiff claimed that she was disabled due to arthritis in her feet and back pain, not a mental impairment, and had no history of treatment by a mental health specialist. (*See* Tr. 571, PAGEID #: 619). Thus, the sole in-person psychological examination of Plaintiff was by Dr. Sarver on February 10, 2014, upon referral from the DDD. (Tr. 569–75, PAGEID #: 617–23). Although Dr. Sarver diagnosed Plaintiff with adjustment disorder, the ALJ observed that the disorder, by definition, should not last 12 consecutive months. (Tr. 39, PAGEID #: 82). Non-examining psychologists Dr. Haskins and Dr. Lai indicated that they rendered opinions more limited than Dr. Sarver's opinion, but they included a specific limitation that he did not—that Plaintiff be restricted to one to four step tasks. (Tr. 107, PAGEID #: 151; Tr. 125–26, PAGEID #: 169–70).

The ALJ was aware of this limitation and asked the VE about it during the hearing. (Tr. 72, PAGEID #: 115). The VE opined that an individual who was limited to one to four step tasks would be unable able to care for her own hygiene and precluded from competitive work.

(Tr. 73–75, PAGEID #: 116–18). Upon evaluation of the record, the ALJ ultimately determined that Plaintiff was not such an individual, given that her activities of daily living were no more than mildly restricted: she reported the ability to shop, cook, wash dishes, do laundry, pay bills, manage her household, and care for her grandchildren, over whom she has custody. (Tr. 32, PAGEID #: 75).

Plaintiff's first statement of error faults the ALJ for not assigning a specific weight to Dr. Sarver's opinion and for providing an inadequate explanation for assigning little weight to non-examining psychologists Dr. Haskins and Dr. Lai. Plaintiff's second statement of error faults the ALJ for failing to include limitations in the RFC to account for Plaintiff's moderate limitations in concentration, persistence, and pace. The Court finds both assignments of error to be without merit.

**A. The ALJ's Evaluation of the Medical Evidence**

Plaintiff first argues that the ALJ erred by failing to consider properly the opinions of consultative psychologist Dr. Sarver and non-examining psychologists Dr. Haskins and Dr. Lai. (Doc. 12 at 9–12). Plaintiff acknowledges that the ALJ discussed Dr. Sarver's opinion but contends that the ALJ committed reversible error by failing to "state[ ] what weight he assigned the opinion." (*Id*. at 10). Plaintiff likewise contends that the ALJ committed reversible error when he assigned "little weight" to the opinions of Dr. Haskins and Dr. Lai "without an adequate explanation…." (*Id*. at 11). Finally, Plaintiff argues that the ALJ failed to consider the relevant factors when deciding what weight to afford these medical source opinions. (*Id*.).

    1.    *Weight Assigned to Dr. Sarver's Opinion*

Although Defendant does not identify a specific weight assigned by the ALJ to Dr. Sarver's opinion, she notes that the ALJ considered that opinion "at length[] when assessing the

14

medical source opinions of record." (Doc. 14 at 5) (quoting Tr. 36, PAGEID #: 79). Defendant argues:

> What Plaintiff fails to acknowledge is that Dr. Sarver's opinion is consistent with the ALJ's mental RFC finding. Plaintiff's Brief at 9-12. Indeed, as noted above, Dr. Sarver opined that Plaintiff could understand, remember, and carry out simple job instructions and would have difficulty with multi-step tasks, and had a limited capacity to deal with the complexities and demands of the normative work situation (Tr. 574-75). Logically consistent with those limitations, the ALJ limited Plaintiff to non-complex, routine and repetitive tasks on a sustained basis with routine breaks, as well as a limitation that any work must not require more than ordinary or routine changes in work setting or duties. (*Compare* Tr. 33 *with* Tr. 574-75). Tellingly, in her brief, Plaintiff makes no mention of what the ALJ discussed in terms of Dr. Sarver's opinion, nor does she reference the similarities between Dr. Sarver's opinion and the ALJ's mental RFC finding. Plaintiff's Brief at 9-10. This evidence shows that the ALJ did consider Dr. Sarver's findings and opinion, and did not commit reversible error when evaluating his opinion. As such, Plaintiff's argument to the contrary should be rejected.

(*Id*. at 6). At bottom, Defendant argues harmless error. (*See id*.).

The Court agrees with Defendant. Although the ALJ did not expressly state what weight he accorded Dr. Sarver's opinion, that error is harmless because Dr. Sarver's opinion was consistent with the ALJ's findings concerning Plaintiff's mental RFC. *See, e.g.*, *Handy v. Comm'r of Soc. Sec.*, No. 2:14-cv-1371, 2015 WL 4592200, at *4 (S.D. Ohio July 29, 2015) (finding harmless error where the ALJ "did not state what weight she assigned" to a physician's opinion), report and recommendation *adopted by* 2015 WL 6164112 (S.D. Ohio Oct. 21, 2015); *Sarria v. Comm'r of Soc. Sec.*, 579 F. App'x 722, 724 (11th Cir. 2014) ("Although the administrative law judge did not state what weight she accorded Dr. Davigulus's or Dr. O'Neal's opinions, that error was harmless because those opinions were consistent with the findings about Sarria's mental residual functional capacity.")

For example, the ALJ's limitation of Plaintiff to "non-complex, routine and repetitive tasks" (Tr. 33, PAGEID #: 76), is consistent with Dr. Sarver's conclusion that Plaintiff would

15

"have no particular difficulty in understanding, remembering, or carrying out simple job instructions" (Tr. 574, PAGEID #: 622). Similarly, the ALJ's limitation of Plaintiff to positions that "should not require significant contact or any interaction with the general public" and no "more than occasional interaction with supervisors or coworkers" (Tr. 33, PAGEID #: 76), is consistent with Dr. Sarver's findings that Plaintiff "manifested no particular difficulty getting along with supervisors and coworkers in the work place" historically, but "her depression and anxiety may episodically attenuate this capacity" (Tr. 575, PAGEID #: 623). Further, the ALJ's limitation of Plaintiff to positions that do not "require more than ordinary or routine changes in work setting or duties" (Tr. 33, PAGEID #: 76), addresses Dr. Sarver's observation that Plaintiff's "poor coping skills limit her capacity to deal with the complexities and demands of the normative work situation" (Tr. 575, PAGEID #: 623). Consequently, the ALJ did not commit reversible error in considering Dr. Sarver's opinion.

## 2. *Weight Assigned to Dr. Haskins's and Dr. Lai's Opinions*

The Court next addresses Plaintiff's claim that the ALJ committed reversible error when he assigned little weight to the opinions of Dr. Haskins and Dr. Lai without an adequate explanation. Contrary to Plaintiff's position, the ALJ explained that Dr. Haskins and Dr. Lai relied on Dr. Sarver's assessment but, at the same time, stated that he relied too heavily on Plaintiff's opinion. (Tr. 38–39, PAGEID #: 81–82). Further, to the extent that Dr. Haskins and Dr. Lai may have relied on Dr. Sarver's diagnosis of adjustment disorder, the ALJ observed that the disorder, by definition, should not last 12 consecutive months. (Tr. 39, PAGEID #: 82). Based on those considerations, the ALJ determined that the medical evidence "does not support a finding that the claimant is limited to performing '1 to 4 step tasks,' and the evidence is not consistent with any marked ratings." (*Id.*). Additionally, the ALJ determined that Plaintiff's

activities of daily living far exceed the hypothetical individual's ability to perform 1 to 4 step tasks as explained by the VE. (*See* Tr. 32, PAGEID #: 75). Consequently, Plaintiff's argument for reversal based on the VE's testimony is without merit. (Doc. 12 at 12).

3. *Consideration of Relevant Factors*

Plaintiff's final argument in support of the first statement of error is a catch-all: she alleges that the ALJ erred by failing to consider the factors in 20 C.F.R. §§ 404.1527(c)(1)-(c)(6) and 416.927(c)(1)-(c)(6) in determining what weight to afford the mental health opinions. (Doc. 12 at 11). Plaintiff conducts no such discussion herself but nevertheless maintains that, "[w]ith no discussion by the ALJ of the factors set forth in the regulations for analyzing medical evidence, there is no way of determining upon what the ALJ based his findings." (*Id*.).

As one court observed recently:

> In formulating the RFC, ALJs "are not required to adopt any prior administrative medical findings." 20 C.F.R. § 416.913(a). Nonetheless, they still must consider all of the medical opinions contained in the record "together with the rest of the relevant evidence." 20 C.F.R. § 416.927(b), (c). The ALJ is charged with considering "all of the following factors in deciding the weight we give to any medical opinion." 20 C.F.R. § 416.927(c). These factors include: 1) examining relationship, 2) treatment relationship, 3) supportability, 4) consistency with the record, 5) specialization of the source, 6) other factors, such as understanding the disability programs and knowledge of the other information in the case record. *See* 20 C.F.R. § 416.927(c)(1)-(6).
> However, the ALJ is not required to articulate specific findings as to each of these factors. Indeed, neither the regulations or Sixth Circuit case law requires an "exhaustive factor-by factor analysis." *Francis v. Comm'r Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011). If an RFC assessment *conflicts* with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. *Puckett v. Colvin*, 2014 WL 1584166, at *8 (N.D. Ohio April 21, 2014) (*citing* Social Security Ruling 96-8p, 1996 WL 374184, *7 (July 2, 1996)).

*Philpot v. Comm'r of Soc. Sec.*, No. 1:17-cv-447, 2017 WL 6759417, at *14–15 (N.D. Ohio Dec. 12, 2017), *adopted by* 2017 WL 6731402 (N.D. Ohio Dec. 28, 2017).

17

As explained above, the RFC is consistent with Dr. Sarver's findings, and the ALJ explained why he did not include the one to four step task limitation provided by Dr. Haskins and Dr. Lai in Plaintiff's RFC. Consequently, Plaintiff's final argument in support of the first statement of error is without merit.

**B. The RFC's Failure to Include Limitations in Concentration, Persistence, or Pace**

Plaintiff next statement of error concerns the ALJ's finding that Plaintiff has moderate difficulties in maintaining concentration, persistence, and pace. (Doc. 12 at 12). Plaintiff acknowledges that the ALJ limited her to "non-complex, routine and repetitive tasks" and stated that "[a]ny work must not require more than ordinary or routine changes in work setting or duties," but she maintains that "those restriction [sic] are not sufficient." (*Id*. at 13; *see also id*. ("Even non-coplex [sic], routine, and repetitive work requires a worker to focus and work at a place that an individual with [Plaintiff's] limitations would not be able to satisfy and even 'ordinary or routine changes in work settings or duties' doe [sic] not eliminate the need to maintain focus and pace.")). In support of this position, Plaintiff relies on *Ealy v. Commissioner of Social Security*, 594 F.3d 504 (6th Cir. 2010).

In *Ealy*, the ALJ relied on evidence that limited the plaintiff to "simple, repetitive tasks to '[two-hour] segments over an eight-hour day where speed was not critical.'" *Id*. at 516. Nevertheless, the ALJ posed a "streamlined hypothetical" which "omitted these speed- and pace-based restrictions completely." *Id*. Because the hypothetical should have included the restriction that Ealy could work two-hour work segments during an eight-hour work day and that speed could not be critical to his job, the Sixth Circuit found it failed to fully address the plaintiff's limitations. *Id*.

However, "*Ealy* does not require further limitations in addition to limiting a claimant to 'simple, repetitive tasks' for every individual found to have moderate difficulties in concentration, persistence, or pace." *Jackson v. Comm'r of Soc. Sec.*, No. 1:10-cv-763, 2011 WL 4943966, at *4 (N.D. Ohio Oct. 18, 2011). Rather, "*Ealy* stands for a limited, fact-based, ruling in which the claimant's particular moderate limitations required additional speed- and pace-based restrictions." *Id*.

In this case, Dr. Haskins and Dr. Lai opined that Plaintiff has moderate limitations in concentration, persistence, and pace, which they addressed by limiting Plaintiff to simple one to four step tasks in a setting without strict production quotas and no need for close sustained focus/concentration. (Tr. 108, PAGEID #: 152; Tr. 125–26, PAGEID #: 169–70). Indeed, the ALJ recognized this at the hearing, but indicated that "strict production quotas … would be a new element" that he ultimately did not include in the hypothetical or the RFC. (Tr. 74, PAGEID #: 117). In making his decision, the ALJ stated:

> With regard to concentration, persistence, or pace, the claimant has no more than moderate difficulties. She was diagnosed with adjustment disorder with mixed anxiety and depressed mood (6F). She testified that her attention and concentration are limited. The consultative examiner noted no difficulty with attentional pace or persistence; her memory was intact, and "she was able to recall a detailed and extensive personal, family, and work history" (6F/6).

(Tr. 32, PAGEID #: 75). Thus, based on Dr. Sarver's opinion and Plaintiff's testimony, the ALJ found that Plaintiff's particular moderate limitations did not require additional restrictions. (*Id*.). Under these circumstances, the ALJ decision to limit Plaintiff to "non-complex, routine and repetitive tasks" and no more than "ordinary or routine changes in work setting or duties" adequately accommodated Plaintiff's moderate limitations. *See, e.g.*, *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 437 (6th Cir. 2014) (finding that "the limitation to simple, routine, and repetitive tasks adequately conveys Smith–Johnson's moderately-limited ability 'to

19

maintain attention and concentration for extended periods'"). Thus, Plaintiff's second statement of error is without merit.

## IV. CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED**, and that judgment be entered in favor of Defendant.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1). Failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 152–53 (1985).

IT IS SO ORDERED.

Date: January 22, 2018  /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE